But he also evidently intended whatever of his estate was not received by his son, or his son's children, should be received by his daughter. This intention, I think, appears from the fact that he not only gave her "all the rest, residue, and remainder," but "as well, any legacies herein given which may for any cause lapse." The testator certainly did not intend to die intestate as to any part of his estate, and this should have its proper influence in determining the construction of the will. It has happened that the testator's son, John, has died without leaving children surviving him to take the principal of the $4,000 given them. No mention is made in the will what shall become of the $4,000 in this event, unless we can find it in the latter clause, where all the rest, etc., is given the daughter; and I think it is proper to so conclude, for the testator there says, "as well, any legacies herein given which may for any cause lapse," and this is the only case where a lapse could have happened, except only one other,—the death of the son before the testator,— which it is not probable he contemplated. This being so, it results that the daughter or her representatives are entitled to the $4,000, unless we find in the will that the testator intended that his daughter should only take if she herself survived her brother. If this was his intention, then this legacy does not pass under her will, but goes to the next of kin of the testator by statute, he having failed by his will to provide what should be done with it on the happening of this event.

I have said that the daughter or her representatives take unless we find in the will that the daughter must survive her brother; that is, the will may say so in so many words, or the will may say so by force of the construction given by the courts to the words used, they not being sufficiently plain of themselves. If, however, the will itself shows a clear intention that the legatee shall take absolutely on the happening of the contingency, whether he survive the contingency or not, there is no principle of law which will prevent the taking. In those cases where the courts have held that the legatee must survive the contingency upon which the legacy depended, the decisions rest upon a rule of construction, and not upon a statute or principle of law. It may be said that it is more natural to suppose that the testator would prefer to have his collaterals receive it under the statute, his descendants having failed to live to receive it, rather than have it go to strangers under his daughter's will. It is, however, evident that he did not concern himself in his will about what should ultimately become of any of the property given by him to her, for no mention is made by him what direction any of it is to take at her death. His gifts to her were clearly intended to be absolute, and uncoupled with any condition, except the single one, regarding the $4,000, that her brother die without leaving children him surviving. I therefore conclude that Sarah Jane Mapes, at the death of the testator, took a contingent remainder in the $4,000 legacy, which then vested in her as a right, according to its character, and became absolute at the death of John S. Mapes. The decree should direct that the executors of George Mapes, deceased, pay over the fund to the executors of Sarah J. Mapes, deceased.

---

### *In re* BAITY'S ESTATE.

*(Surrogate's Court, Westchester County.* January, 1891.)

ADMINISTRATORS—ACCOUNTING—APPLICATION TO SET ASIDE.

    In a proceeding by the wife and guardian of a lunatic to set aside an accounting of administrators with the will annexed, it appeared that, prior to the appointment of such administrators, the interest of the ward, who was a devisee of the will, was sold on executions against him, and purchased by one of the administrators; that such devisee afterwards became insane; that these facts were set forth in the petition for accounting, and recited in the decree; and that the lunatic was represented in the accounting by a special guardian. *Held*, that the application on the ground that there was no proof produced showing the judicial sale, and that

the administrators withheld important facts touching the rights of the lunatic, and made unlawful claims, will be denied when the petition does not deny the sale and purchase, or disclose what facts were withheld and unlawful claims were made.

Application by Maria Baity, wife of John R. Baity, a lunatic, to set aside an accounting of Eliza Gott and John H. Moran, as administrators with the will annexed of the estate of William Baity, deceased. Application denied.

John R. Baity was a devisee of the will of decedent, and was adjudged insane in August, 1880. Prior thereto his entire interest in the estate of decedent was sold on judgments against him, and purchased by Eliza Gott. In 1887 she and Moran were appointed as administrators of the estate with the will annexed, and in March, 1888, they rendered an account, in which the judicial sale to Eliza Gott was set forth. A decree was entered reciting the sale, and awarding her the residue of the estate, except a fund held in trust. The petition to set aside the decree alleges that no proof of the sale to Eliza Gott was offered; that the administrators, in their accounting, withheld important facts and statements touching the rights and interests of said lunatic, and made unlawful claims.

*A. B. Tappen,* for the motion.   *Oivide Dupre,* opposed.

COFFIN, S. Although not distinctly alleged in the petition, it may be gathered from the facts stated therein that it is sought to set aside the decree upon the ground of fraud. There can be no doubt that the lunatic was duly cited to attend the accounting, and that he was duly represented by special guardian. Indeed, the fact is admitted. The petitioner's whole case seems to rest chiefly on the fact that no proof was produced to the court showing the judicial sale of John R. Baity's interest, and the purchase thereof by Mrs. Gott. It will be observed that the petitioner nowhere denies such sale and purchase, and does not, therefore, attempt to establish any fraud in that respect. Nor does she allege any newly-discovered evidence, or clerical error in the proceeding. It is true that the petition alleges that on the accounting the administrators withheld from the court important facts and statements touching the rights and interests of the lunatic, and made unlawful claims. What facts and statements were withheld? What were the unlawful claims made by them? The petition fails to disclose them,—to tell us what those facts were, or to show how any claims made were unlawful. Had it been shown that the lunatic's interest, claimed to have been sold under judgments and purchased by Mrs. Gott six years before he was adjudged insane, and long before she became administratrix, had never been so sold or purchased, a different question would have been presented. Then the decree could have been challenged as fraudulent. If it were true that there was no proof, or insufficient proof, of the claim of Mrs. Gott to the share of the lunatic, that fact would not render the proceeding obnoxious to the charge of fraud, clerical error, or other like cause, for which the surrogate, under the provisions of subdivision 6 of section 2481 of the Code, is authorized to open or set aside the decree. The only remedy would be an appeal. *Singer* v. *Hawley,* 3 Dem. Sur. 571, affirmed by court of appeals, 100 N. Y. 206, 3 N. E. Rep. 68. But there was proof; whether sufficient or not to warrant the decree is immaterial. The sale of John R. Baity's interest under legal proceedings, and the purchase thereof, were alleged and set forth, both in the verified petition and also in the verified account, and to which, thus challenged, no objection was interposed by the special guardian, or by any other person. This statement was properly made in the account, and, uncontradicted, was sufficient evidence on which to base the decree. Dayton says, (Practice, 508:) "The executor or administrator may also include in the account such statements of any facts or circumstances which may have attended the administration as he may deem important to a correct understanding of the manner in which he may have performed the duties of his trust, or to a just settlement of the

affairs of the estate." See, also, Redf. Pr. 759, 760. The petition and account of proceedings are in the nature of pleadings, and, when properly verified, are, in general, as to the facts stated, unless questioned, to be regarded as true. The petitioner herein, the wife of the lunatic, appears to have no legal interest in the estate which would render her a proper party to the proceeding. Whether validity is rendered to the application by the fact that the special guardian joins in it has not received much consideration. It has been deemed best to decide the matter upon its merits. An order will be entered denying the application.

---

### *In re* LAYTIN *et al.*

*(Surrogate's Court, Westchester County.* November, 1889.)

LIFE ESTATES—COST OF IMPROVEMENTS—REMAINDER.

    The cost of replumbing a house left to one for life should, as a permanent improvement, calculated to benefit the remainder-men as well as the life tenant, be apportioned between the two in such ratio as the value of the life estate bears to that of the reversionary estate.

Proceeding for the judicial settlement of the accounts of William Laytin and others as trustees under the will of William Laytin, deceased.

*D. E. Meeker,* for trustees. *D. T. Walden,* for general guardian of Edith and Mary Davidson, minors.

COFFIN, S. The testator, by his will, devised a house and lot in the city of New York to his wife for life, and bequeathed to her an annuity of $7,000. The trustees now claim a credit, as against the *corpus* of the estate, of upwards of $1,000 for moneys expended by them in replumbing the said house. No evidence has been given in the case, and the facts rest wholly in the statements made by counsel; they appearing to assume that this court has sufficient knowledge on the subject to enable it to determine the question intelligently. In this respect, it must be admitted, they are laboring under a mistake.

It is stated that the old plumbing had become so defective or out of repair that the water ran down and injured the inside walls of the house, and that the house had become almost untenantable, and dangerous to health, in consequence of foul odors engendered; and that, in the judgment of the trustees, it became necessary to take out the old and replace it by new, and on an improved system of, plumbing. How long the new plumbing shall answer its purpose, the court, in the absence of the testimony of those skilled in such matters, has no means of knowing, but, for the purposes of this matter, will assume that it is a permanent improvement, and calculated to be of benefit to the remainder-men. It is not of the character of an ordinary repair, like that of a burst pipe, which the life tenant is bound to make. If this be so, it is also a great benefit to the life tenant, and the expense must be apportioned between them. There being no evidence of the value of the house and lot, or of the age of the life tenant, this apportionment cannot here be made, but may be done on settling the decree. The present value of the life estate, as ascertained, will be deducted from the whole value of the property, and the remainder will be the value of the reversionary interest, and the expense will be apportioned *pro rata* as between those several amounts.

The counsel for Melville Boyd, the general guardian of Edith and Mary Davidson, although he filed objections to other items in the account, has, in his brief submitted, confined himself exclusively to the charge for plumbing. It is fair to infer that he has abandoned all other objections, and they have not been critically considered. It may be remarked, however, that on a cursory glance they do not appear to be tenable.